**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Joseph C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-1313-RHH |
| | ) | |
| | ) | |
| FRANK J. BISIGNANO,<br>Commissioner of Social Security, | )<br>) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Joseph C.'s ("Plaintiff's") appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court reverses and remands the Commissioner's decision.

## I. Background

On or about September 30, 2022, Plaintiff applied for DIB, alleging he has been unable to work due to disability since October 16, 2020. (Tr. 79.) Plaintiff alleged disability due to mesenteric artery thrombosis, chest and abdominal pain, massive anxiety, panic attacks, high blood pressure, high red blood cell counts, and prediabetes. (Tr. 79.) His application was initially denied and denied again on reconsideration. (Tr. 79-87, 90-98.) Then, he filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 121-22.) On January 2, 2024, the ALJ held a hearing on

Plaintiff's claim. (Tr. 51-78.) Plaintiff was represented by counsel at the hearing, and Plaintiff and an impartial vocational expert both testified. *Id.*

In a decision issued on March 26, 2024, the ALJ found Plaintiff was not disabled as defined in the Act from the alleged onset date through the date he was last insured. (Tr. 32-45.) On March 26, 2024, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 220-21.) On February 4, 2025, the Appeals Council denied Plaintiff's request for review, and adopted the ALJ's decision in full. (Tr. 11-15.)

## II. Evidence Before the ALJ

The Court adopts the statement of facts set forth in Plaintiff's statement of facts (ECF No. 21) and Defendant's response (ECF No. 27-1). Together, these statements provide a fair description of the record before the Court.

Plaintiff completed two Function Reports dated November 21, 2022, and February 16, 2023, respectively. (Tr. 286-295, 313-320.) He wrote that his ability to work is limited by a mesenteric artery thrombosis that cannot "be resolved." He reported constant stomach pains, pressure and bloating, which makes him think the artery is compromised, which causes anxiety, affecting his ability to focus or concentrate on anything else. "It paralyzes [him] with fear." (Tr. 313.) He also has a bulging/herniated disc that causes tremendous pain and trouble walking. (Tr. 313.) He reported that his daily activities vary based on symptoms. His sleep schedule is "not regular" due to illness and pain and anxiety. Sometimes he lies in bed all night and then sleeps during the day, and sometimes he is unable to get out of bed or able to function beyond basic needs that must be accomplished. (Tr. 314.)

Plaintiff shares custody of his daughter and gets her to school or practices with the help of his mother. (Tr. 289, 314.) When he is "in bad shape" his daughter spends the night with his

mother. (Tr. 289.) He cares for his pets with the help of his mother and sons. (Tr. 314.) His girlfriend and mother and sons also help remind him about personal care and grooming, but he does not need reminders to take his medicine. At times he is unable to do things like bathe or keep haircut appointments because of fear and pain and the inability to get out of bed for hours. (Tr. 314.) He prepares his own meals using “easy” or “ready made” foods like sandwiches or frozen dinners, and occasionally will cook beef or pork. (Tr. 290, 315.) In November 2022, Plaintiff reported that he does indoor and outdoor chores for ten minutes up to a couple of hours, but is limited by the time he can stand and the temperature he can tolerate. (Tr. 290.) In February 2023, Plaintiff reported he does not do “near as much as I used to be able to do,” he rarely can complete more than twenty minutes max of activity, and that he cannot tolerate extremes in heat or cold due to blood thinners. (Tr. 315.) He only goes outside when necessary to let his dog out or to go to appointments. (Tr. 316.) Plaintiff can handle money and goes shopping for groceries as needed, but goes with others when possible. He can drive, but usually short distances and usually not alone. To explain why he cannot go out alone, Plaintiff reported “I am fearful something will happen and do not want to be alone and need someone to help calm me.” (Tr. 316.) To get his mind off his pain and anxiety, Plaintiff watches television, or at least has it on in the background, reads, and plays games on his phone. (Tr. 292, 317.)

Plaintiff reported that due to his back issues, he is unable to walk, sit, lift, or stand for any extended period of time. Due to the pain/pressure from his artery thrombosis and anxiety, he has difficulties with memory, completing tasks, concentration, understanding, and following instructions. (Tr. 318.) His attention duration depends on whether his issues are flaring up, but he can finish what he starts and follow instructions as long as he is not having anxiety or pain. (Tr. 318.) He gets along with authority figures. He does not handle stress or changes in routine well

due to his anxiety. He has irrational fears and "what if" thoughts. (Tr. 319.) He reported that he has trouble making plans because he never knows how he will feel due to pain and anxiety. He sometimes has trouble with bathing and grooming due to his anxiety so he cannot work a regular schedule or go places, and his concentration levels are now horrible due to the pain/pressure and anxiety/fear and he cannot concentrate. (Tr. 320.)

On January 2, 2024, Plaintiff testified before the ALJ. Plaintiff reported that he was an electrician for almost 25 years. (Tr. 56.) He testified that he no longer works due to his anxiety and abdominal and chest pain. His anxiety can cause abdominal and chest pain, and the abdominal and chest pain can cause the anxiety. "[T]he two set each other off." (Tr. 63.) His anxiety episodes increased during COVID, and he deteriorated to a point where he was laid off. (Tr. 60.) He has not worked since October 2020. (Tr. 64.) Plaintiff stated that he has deteriorated to the point where he cannot leave his house without his girlfriend, even to go visit his mother's house across the street. (Tr. 64.) He gets anxious and doesn't want to take Xanax to manage the anxiety because he feels intoxicated by it and cannot drive due to the medication side effects. He testified that leading up to the hearing, he could not relax his mind, and he "had to take two [Xanax] today just to be able to sit here and talk to you without freaking out." (Tr. 66.)

He sees a psychologist weekly through the VA and is also treated by a psychiatrist and other doctors. (Tr. 65.) He hardly sleeps, and his doctors blame his sleep issues on medication. (Tr. 65.) His girlfriend goes to the store for him, and sometimes he will go with her. (Tr. 67.) He cannot shower himself or shave, and he has not gotten a haircut in over a year. (Tr. 67.) On a typical day, he lays in bed and might be afraid to get out of bed and do anything that might cause a panic attack, like going somewhere, or standing up too long. If he stands for more than four hours, it seems like for the next couple days his abdomen hurts so badly that he cannot get out of bed. (Tr. 67.) His

daughter lives with him sometimes, and his mother across the street gets his daughter to school and feeds her. (Tr. 68.)

Additional specific facts will be discussed as needed to address the parties' arguments.

### III. Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet

or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**IV. The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements through December 31, 2026, and he has not engaged in substantial gainful activity since the alleged onset date of October 16, 2020. (Tr. 34.) Next, the ALJ found that Plaintiff had the following severe impairments: mild multilevel degenerative disc disease and neural foraminal stenosis of the cervical spine; mild lumbar spine osteoarthritis; mild thoracic spine osteoarthritis; obesity; superior mesenteric artery aneurysm, thrombosis, and dissection; hypertension; and generalized anxiety disorder. (Tr. 34.)

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 35.) The ALJ also determined that Plaintiff had the residual functional capacity to perform light work with the following additional limitations:

> He can frequently climb ramps and stairs; he can occasionally climb ladders, ropes, and scaffolds; he can frequently stoop; he can occasionally reach overhead; he cannot work at unprotected heights or around hazardous machinery; he can have no concentrated exposure to extreme heat or cold; he can maintain the concentration required to understand, remember, and carry out simple and routine tasks; he cannot work at a fast pace such as an assembly line, but can stay on task and meet

> reasonable production requirements in an environment that allows him to maintain a flexible and goal-oriented pace; he is limited to work that requires only occasional changes in the work setting which are introduced gradually; and he can have occasional interaction with coworkers and supervisors, but no interaction with the public.

(Tr. 38.) The ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 42.) The ALJ found that Plaintiff is a younger individual with at least a high school education, and transferability of job skills is not material to the determination of disability. (Tr. 43.) Based on Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 43.) These jobs include cleaner (Dictionary of Occupational Titles (DOT) No. 323.687-014, light exertion level, SVP 2, approximately 440,000 jobs in the national economy), hand packer (DOT No. 920.687-018, light, SVP 1, approximately 317,000 jobs in the national economy), and production worker (DOT No. 222.687-014, light, SVP 2, approximately 197,000 jobs in the national economy). (Tr. 44.) Therefore, the ALJ concluded that Plaintiff was not disabled, as defined in the Act, from October 16, 2020, through March 26, 2024. (Tr. 44-45.)

## V. Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI. Discussion

In her sole point of error, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's credibility, meaning whether the evidence supports Plaintiff's subjective complaints as to the limiting effects of her symptoms. 20 C.F.R. § 404.1529. As Plaintiff correctly notes, Social Security Ruling ("SSR") 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p. However, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's

subjective complaints. *See e.g., Nash v. Comm'r, Soc. Sec. Admin*., 907 F.3d 1086, 1090 (8th Cir. 2018) (noting that credibility determinations are the province of the ALJ).

When determining a claimant's RFC, the ALJ must evaluate the credibility of a plaintiff's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In doing so, the ALJ must consider all of the evidence in an individual's record. Those factors include: (1) claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of his pain or other symptoms; (6) any measures claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (the "*Polaski* factors"). "The ALJ is not mechanically obligated to discuss each of the above factors; however, when rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his or her reasons for discrediting the testimony, and the ALJ's credibility assessment must be based on substantial evidence." *Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. Oct. 28, 2009)). "In evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p. On review by the Court, "'[c]redibility determinations are the province of the ALJ,'" and the Court

defers to the ALJ's determinations "'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'" *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).

Here, the ALJ stated that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 39.) While this is standard language that an ALJ can support with discussion throughout the remainder of the opinion, here, the ALJ's credibility analysis falls short.

First, the ALJ stated that "[i]n terms of objective medical evidence, the medical record supports the claimant's assertion that his impairments cause some limitations in his ability to work. The medical evidence does not, however, support the claimant's contention his impairments prevent him from working entirely." (*Id.*) The ALJ then summarizes the medical record evidence regarding Plaintiff's physical impairments (Tr. 39-40) and subsequently summarizes medical record evidence regarding Plaintiff's mental impairments (Tr. 40-41). The ALJ does not, however, explain how Plaintiff's statements are inconsistent with the other evidence of record.

After summarizing the objective medical evidence and assessing the medical opinion evidence, the ALJ stated that considering the record as a whole, "including Plaintiff's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence shows that Plaintiff's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the evidence of record." (Tr. 42.) However, there is no explanation to support this statement.

For example, the ALJ did not discuss Plaintiff's activities of daily living as part of the RFC analysis. (*See* Tr. 38-42.) The ALJ did, however, reference Plaintiff's activities of daily living at Step Three. In evaluating whether Plaintiff satisfied the "paragraph B" criteria, the ALJ's findings seem to overstate the activities of daily living. For instance, the ALJ states that Plaintiff can "perform some household chores in maintaining his home, including cleaning and washing dishes" and later reiterates that he "cooks, cleans and maintains his home." (Tr. 37, 38.) However, Plaintiff's Function Reports reflect that he could do chores for ten minutes up to a couple of hours in November 2022 (Tr. 290), and by February 2023, he could rarely complete more than twenty minutes of chores (Tr. 315). Even the state agency physicians' summary of Plaintiff's activities of daily living recognized that he "[d]oes hh chores, may need to stop and rest at times." (Tr. 81, 92.) Additionally, the ALJ noted that Plaintiff shops, drives, manages his healthcare, and interacts with family and friends. (Tr. 38.) However, his Function Reports reflect that he only goes outside when necessary to let his dog out or go to appointments, and while he can drive and shop for groceries, he goes out with others when possible because he fears something will happen if he is alone. (Tr. 316.) Indeed, the state agency physicians also noted that while Plaintiff can drive and go out alone, he "[u]sually stays close to home in case he becomes ill." (Tr. 81, 92.) As another example, the ALJ supported her determinations with the statement that Plaintiff was able to testify clearly and logically during the hearing (Tr. 38), but omitted that Plaintiff testified that he "had to take two [Xanax] today just to be able to sit here and talk to you without freaking out." (Tr. 66.) Furthermore, to the extent that Plaintiff is able to do some of these activities, the Eighth Circuit has "repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Hogg v. Shalala,* 45 F.3d 276, 278 (8th Cir. 1995); *Reed v. Barnhart*, 399 F.3d

917, 923 (8th Cir. 2005) ("[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." (citation modified)). After reviewing the record, the Court does not find inconsistencies between Plaintiff's description of his daily activities and his subjective complaints of panicking or becoming anxious when interacting with others or his difficulty concentrating, completing tasks, and other symptoms.

Indeed, Plaintiff reported that his daily activities vary based on symptoms, and sometimes he is unable to get out of bed or function beyond basic needs that must be accomplished. (Tr. 314.) Plaintiff makes himself sandwiches and frozen dinners to eat, cleans for twenty minutes max at a time, and reported difficulty showering and shaving, which is supported by his therapy homework assignment of showering twice per week. (*See* Tr. 845.) While the ALJ described his hobbies as he "enjoys watching TV, reading, and playing games on his phone" (Tr. 37), Plaintiff reports that he does these things the majority of the day to help get his mind off his pain and anxiety. (Tr. 292, 317.) In fact, during a psychotherapy appointment in which Plaintiff reported his anxiety and mood were somewhat better, he reported he was able to "do more than lay in bed and watch Big Bang Theory and play solitaire." (Tr. 572.) While Plaintiff's day to day varied, such "minimal daily activities, consisting primarily of watching TV, are consistent with chronic mental disability." *Pate-Fire v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)); *see also Harrison v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1541609, at *8 (E.D. Ark. May 16, 2022), *report and recommendation adopted,* No. 4:21-CV-00076-LPR, 2022 WL 4381076 (E.D. Ark. Sept. 22, 2022) (characterizing claimant's daily activities of living of "mostly watches television, but he can attend to his own personal care, prepare sandwiches, and

help his mother with household chores for about an hour every week," has driver's license, will briefly shop in stores, and attends small church weekly were "minimal" activities consistent with chronic mental disability and did not support the ALJ's credibility finding).

Additionally, the undersigned cannot determine how the ALJ supported her statement with the longitudinal medical record. While the ALJ relies heavily on relatively normal mental status exams, there is limited discussion regarding psychotherapy treatment and other mental health appointments. (*See* Tr. 41 and supporting citations.) In fact, the ALJ provides minimal discussion of any mental health treatment that took place after 2022. She briefly references three appointments in 2023, wherein he reported worsening anxiety (in January 2023), had a normal mental status exam (in August 2023), and where his physician noted his recent reports of increased anxiety were likely caused by clonazepam withdrawal (in October 2023). (Tr. 41.) Otherwise, there is no discussion of his mental health treatment beyond the ALJ noting that that Plaintiff regularly reported or was observed to display behavior and temperament consistent with his mental health issues, including panic attacks, mood swings, feelings of hopelessness, difficulty thinking or concentrating, insomnia, difficulty being around others, and fatigue. (Exhibits 4F; 7F; 9F; 12F; Hearing Testimony). (Tr. 40-41.) While it is reasonable for an ALJ to rely on normal exams to support a finding, the ALJ fails to explain how normal mental status exams here were inconsistent with Plaintiff's subjective reports. As the ALJ acknowledges, Plaintiff regularly reported increased anxiety, panic attacks, difficulty concentrating and being around others, and fatigue. Plaintiff's mental health providers consistently adjusted his medications and documented his anxiety and panic. On a phone call where Plaintiff requested to move up an appointment with a psychologist, the LPN who assisted him noted "pt was extremely anxious through conversations, and frequently talked in circles, making it very difficult for me to understand what he was talking about." (Tr.

677-678.) In light of the evidence in the record concerning Plaintiff's alleged anxiety, difficulty maintaining a schedule, and difficulty with concentrating and completing tasks alone, it is unclear to the Court how the medical evidence undermined the existence of Plaintiff's subjective complaints.

In sum, although the ALJ recounts evidence in the record, her summary seems to overstate Plaintiff's abilities and lacks discussion regarding Plaintiff's substantive mental health treatment. *See, e.g., Zahner v. Bisignano*, No. 4:24-CV-01042-MTS, 2025 WL 2780919, at *3 (E.D. Mo. Sept. 30, 2025) ("it appears that the ALJ ignored evidence of worsening and severe symptoms while focusing on Plaintiff's occasional reports that some of his symptoms had improved and failed to consider the waxing and waning nature of Plaintiff's mental impairments."). The decision does not explain the reasons for the ALJ's credibility determination, nor does her decision make clear to this Court the weight she gave to Plaintiff's statements or the reasons for that weight. Therefore, this matter must be reversed and remanded because, as the record currently stands, it does not appear that the ALJ adequately considered all of the required factors in her credibility assessment or that she complied with the requirements of SSR 96-7p. On remand, the ALJ should consider all of the required factors in determining Plaintiff's credibility, and she should make clear which of Plaintiff's complaints she finds credible, and which she does not find credible.

The Court is mindful that upon reconsideration, the ALJ may come to the same conclusion that work exists in the national economy that Plaintiff can perform. Certainly, an ALJ need not include limitations in an RFC based on evidence that she finds not credible. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). However, the Commissioner must make that decision in the first instance, and it must be supported by substantial evidence. *See Buckner v. Apfel*, 213 F.3d

1006, 1011 (8th Cir. 2000) (noting the deference accorded the ALJ to perform further administrative proceedings).

## VII. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED**. (ECF No. 1, 20.)

**IT IS FURTHER ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. An order of remand shall accompany this memorandum and order.

Dated this 30th day of September, 2026.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE